## Case No. 16,519.

### UNITED STATES v. TILDEN.

[9 Ben. 368;[1] 24 Int. Rev. Rec. 99.]

District Court, S. D. New York.   March, 1878.

INCOME TAX—ASSESSMENT—COLLECTION.

1. The United States sued T. to recover money alleged to be due from him as unpaid taxes or duties on income. The suit was founded on sections 49–51, Act Aug. 5. 1861 (12 Stat. 309–311), and on sections 90–92, Act July 1, 1862 (Id. 473–475), and on the joint resolution of July 4, 1864 (13 Stat. 417), and on sections 116–123, Act June 30, 1864 (Id. 281–285), and on the said sections of the act of 1864, as amended by section 1 of the act of March 3, 1865 (Id. 479–481), and on the said sections of the act of 1864, as so amended, and as further amended by section 9, Act July 13, 1866 (14 Stat. 137–140), and on the said sections of the act of 1864, as so amended, and further amended, and as further amended by section 13, Act March 2, 1867 (Id. 477–480), and on sections 6–17, Act July 14, 1870 (16 Stat. 257–261). Held, that no tax on income could any longer be collected under the act of 1861.

2. The causes of action for unpaid taxes on income, arising under said other provisions, were not barred by the facts that T. made a return, and an amount of tax was assessed against him and he paid it, and no imperfection was discovered until after July 13, 1866, or by the facts that he made no return, and an amount of tax and a penalty, or only an amount of tax, were assessed against and paid by him.

3. Under the acts of 1862 and 1864, the United States may sue for and collect a tax on income without a prior assessment, in the mode specified in the act creating the tax.

[Cited in U. S. v. Little Miami, C. & Z. R. Co., 1 Fed. 701; Folsom v. U. S., 21 Fed. 37.]

4. The case of Dollar Sav. Bank v. U. S., 19 Wall. [86 U. S.] 227, examined and applied.

[This was a suit by the United States against Samuel J. Tilden to recover certain income taxes.]

Stewart L. Woodford, U. S. Dist. Atty., and Roger M. Sherman, Asst. U. S. Dist. Atty.

James Emott, Aaron J. Vanderpoel, Thomas Harland, and Charles F. Stone, for defendant.

BLATCHFORD, District Judge. The complaint in this case contains twelve causes of action, and is framed to collect from the defendant, by an action at law, unpaid taxes or duties on income.

The first count is based on sections 49–51, Act Aug. 5, 1861 (12 Stat. 309–311), and claims to recover, as due on the 30th of June, 1862, the sum of $3,000, as a tax of three per centum on an income of $100,000 for the year next preceding the 1st of January, 1862. That statute imposed a tax on income for the year next preceding the 1st of January, 1862, and declared that it should be due and payable on or before the 30th of June, 1862, and that it should be assessed and collected under such regulations as the secretary of the treasury

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

might prescribe. By section 89, Act July 1, 1862 (12 Stat. 473), it is enacted, "that, for the purpose of modifying and re-enacting, as hereinafter provided," so much of the act of August 5, 1861, "as related to income tax," sections 49, 50 (except so much thereof as relates to the selection and appointment of depositaries), and 51, "be and the same are hereby repealed." The act of 1862 then goes on, in the following sections, to provide for the payment of a tax on income for the year ending December 31st, 1862, and for each of the three years thereafter. The act of 1862 contains no clause preserving the right to collect the tax for any time prior to January 1st, 1862, or any right of action for that purpose, nor does it re-enact any part of the act of 1861 which relates to an income tax for any time prior to January 1st, 1862. On the contrary, the collection of any tax on income for any time prior to January 1st, 1862, is plainly excluded from the operation of the act of 1862, by the terms of that act, and, by the repeal contained in section 89 of the act of 1862, the income tax imposed by the act of 1861 fell altogether, except so far as it had been collected. It is said by the supreme court, in Bennett v. Hunter, 9 Wall. [76 U. S.] 333, decided in 1869, that the income tax imposed by the act of 1861 "has never been collected." The defendant demurs to the first count and the demurrer is sustained.

The second count is based on sections 90–92, Act July 1, 1862 (12 Stat. 473–475), and claims to recover, as due on the 30th of June, 1863, the sum of $6,515, as a duty of five per centum on an income of $130,300 for the year next preceding the 1st of January, 1863.

The third count is based on the same sections of the act of 1862, and claims to recover, as due on the 30th of June, 1864, the sum of $6,250, as a duty of five per centum on an income of $125,000 for the year next preceding the 1st of January, 1864. The defendant, in his answer to the complaint, denies that he received, for either of the years mentioned in the second and third counts, any amount of income in excess of the amount on which he paid a duty, and alleges, that, for each of those years, he paid to the United States the full amount of duty for which he was liable on his income. For a further defence to the second and third counts his answer avers, in respect to each of those two years, that, at the proper time, he made a list or return in due form, to the proper assistant assessor, of the amount of annual income for which he was liable to be assessed; that the proper proceedings prescribed by law were had thereon, assessing an amount of tax against him; that he paid to the proper collector such amount of tax; and that it was not ascertained, at any time within fifteen months after the 13th of July, 1866, that any of the lists were imperfect or incomplete.

The fourth count is based on the joint resolution "imposing a special income duty," approved July 4, 1864 (13 Stat. 417), and claims

to recover, as due on the 1st of October, 1864, the sum of $6,250, as a duty of five per centum on an income of $125,000 for the year next preceding the 1st of January, 1864. The defendant, in his answer to the complaint, denies that he received for the year mentioned in the fourth count any amount of income in excess of the amount on which he paid a duty, and alleges, that, for that year, he paid to the United States the full amount of duty for which he was liable on his income. For a further defence to the fourth count, his answer avers, that, before the 20th of July, 1864, he made a list or return, in due form, to the proper assistant assessor, of the amount of his annual income for the year 1863; that the proper proceedings prescribed by law were had, assessing an amount of special duty against him; that he paid to the proper collector such amount of special duty; and that it was not ascertained, at any time within fifteen months after the 13th of July, 1866, that the list on which said assessment was entered was imperfect or incomplete.

The fifth count is based on sections 116–123, Act June 30, 1864 (13 Stat. 281–285), and claims to recover, as due on the 30th of June, 1865, the sum of $16,000, as a duty of ten per centum on an income of $160,000 for the year next preceding the 1st of January, 1865.

The sixth count is based on the same sections of the act of 1864, as amended by section 1, Act March 3, 1865 (13 Stat. 479–481), and claims to recover, as due on the 30th of June, 1866, the sum of $33,300, as a duty of ten per centum on an income of $333,000 for the year next preceding the 1st of January, 1866. The defendant, in his answer to the complaint, denies all the allegations of the fifth and sixth counts, except those as to his residence and profession and ownership of certain property. For a further defence to the fifth and sixth counts, his answer avers, in respect to each of those two years, that he neglected to make a list or return to the assistant assessor, of the amount of his income; that thereafter the assessor made a list of his annual income, and assessed the duty thereon, and added twenty-five per centum, as a penalty, to the amount of the duty assessed; and that the defendant paid to the collector the amounts of tax and penalties so assessed.

The seventh count is based on the same sections of the act of 1864, as amended by section 1, Act 1865, and as further amended by section 9, Act July 13, 1866 (14 Stat. 137–140), and claims to recover, as due on the 30th of April, 1867, the sum of $5,350, as a tax of five per centum on an income of $107,000 for the year next preceding the 1st of January, 1867.

The eighth count is based on the same sections of the act of 1864, as amended by section 1, Act 1865, and as further amended by section 9, Act 1866, and as further amended by section 13, Act March 2, 1867 (14 Stat. 477–480), and claims to recover, as due on the 30th of April, 1868, the sum of $6,215, as a tax of five per centum on an income of $124,300 for the year next preceding the 1st of January, 1868. The defendant, in his answer to the complaint, denies all the allegations of the seventh and eighth counts, except those as to his residence and profession and ownership of certain property. For a further defence to the seventh and eighth counts, his answer avers, in respect to each of those two years, that he neglected to make a list or return to the assistant assessor of the amount of his income; that thereafter the assessor made a list of his annual income, and assessed the duty thereon, and added fifty per centum, as a penalty, to the amount of the duty assessed; and that the defendant paid to the collector the amounts of tax and penalties so assessed.

The ninth count is based on the same statutory provisions on which the eighth count is based, and claims to recover, as due on the 30th of April, 1869, the sum of $6,625, as a tax of five per centum on an income of $132,500 for the year next preceding the 1st of January, 1869. The defendant, in his answer to the complaint, denies all the allegations of the ninth count, except those as to his residence and profession and ownership of certain property. For a further defence to the ninth count, his answer avers that he neglected to make a list or return to the assistant assessor of the amount of his income for said year; that thereafter the assessor made a list of his annual income for said year, and assessed the duty thereon; and that the defendant paid to the collector the amount of tax so assessed.

The tenth count is based on the same statutory provisions on which the eighth count is based, and claims to recover, as due on the 30th of April, 1870, the sum of $35,550, as a tax of five per centum on an income of $711,000 for the year next preceding the 1st of January, 1870. The defendant, in his answer to the complaint, denies all the allegations of the tenth count, except those as to his residence and profession and ownership of certain property. For a further defence to the tenth count, his answer avers that he neglected to make a list or return to the assistant assessor, of the amount of his income for said year; that thereafter the assessor made a list of his annual income for said year, and assessed the duty thereon, and added fifty per centum, as a penalty, to the amount of the duty assessed; and that the defendant paid to the collector the amounts of tax and penalties so assessed.

The eleventh count is based on sections 6–17, Act July 14, 1870 (16 Stat. 257–261), and claims to recover, as due on the 30th of April, 1871, the sum of $13,887.50, as a tax of two and one-half per centum on an income of $555,500 for the year next preceding the 1st of January, 1871.

The twelfth count is based on the same sections of the act of 1870, and claims to recover, as due on the 30th of April, 1872, the sum of $2,500, as a tax of two and one-half per centum on an income of $100,000 for the year next preceding the 1st of January, 1872. The defendant, in his answer to the complaint, de-

nies all the allegations of the eleventh and twelfth counts, except those as to his residence and profession and ownership of certain property. For a further defence to the eleventh and twelfth counts, his answer avers, in respect to each of those two years, that he neglected to make a list or return to the assistant assessor, of the amount of his income; that thereafter the assessor made a list of his annual income and assessed the duty thereon, and added fifty per centum, as a penalty, to the amount of the duty assessed; and that the defendant paid to the collector the amounts of tax and penalties so assessed.

The plaintiffs demur to each of the above recited "further" defences, on the ground that they do not any of them constitute defences to the complaint or to any part of it. The demurrer to the further defences to the second, third and fourth counts raises the question, whether the causes of action in those counts are barred by the facts, that the defendant made a return, and an amount of tax was assessed against him, and he paid it, and no imperfection was discovered until after the 13th of July, 1866. The demurrer to the further defences to the fifth, sixth, seventh, eighth, tenth, eleventh and twelfth counts, raises the question, whether the causes of action in those counts are barred by the facts, that the defendant made no return, and an amount of tax and a penalty were assessed against him, and he paid them. The demurrer to the further defence to the ninth count raises the question, whether the cause of action in that count is barred by the facts, that the defendant made no return, and an amount of tax was assessed against him, and he paid it.

The act of 1862, in imposing the income tax, provides (section 90) that "there shall be levied, collected and paid annually," upon annual income, a duty specified in, and fixed by, the act, on the amount of such income, three per centum or five per centum, according to the amount of the income. It then goes on to specify (section 91) what deductions shall be made, in estimating the annual income. It provides (section 93) that it shall be the duty of all persons to make return of income, and that, where no return is made, the assessor or assistant assessor shall assess the amount of income. In either case, the amount of income and the amount of tax or duty are required (section 14) to be entered on a list. The act provides (section 19 and 92), that the collector shall collect the tax. The tax is to be collected (section 10) according to the list. Sections 19–21 provide for a collection by distraint and sale of property, both personal and real.

The joint resolution of 1864 provides, that, "in addition to the income duty already imposed by law, there shall be levied, assessed and collected," a special income duty upon income, for the year ending December 31st, 1864, "by levying, assessing and collecting said duty" at the rate of five per centum, and that "the same shall be levied, assessed, estimated and collected, except as to the rate, according to the provisions of existing laws for the collection of an income duty annually."

The act of 1864 provides (section 116) that "there shall be levied, collected and paid annually," upon annual income, a duty specified in, and fixed by, the act, on the amount of such income, five per centum, or seven and a half per centum, or ten per centum, according to the amount of the income. It specifies (section 117) what deductions shall be made in estimating the annual income. It provides (section 118) that it shall be the duty of all persons to make return of income, and that, where no return is made, the assessor or assistant assessor shall assess the amount of income "and the duty thereon." In either case, the amount of income and the amount of tax or duty are required (section 18) to be entered on a list. The act provides (sections 28 and 119) that the collector shall collect the tax. The tax is to be collected (section 20) according to the list. Sections 28–31 provide for a collection by distraint and sale of property, both personal and real. The amendments made by the act of 1865 do not substantially change the scheme of procedure. The duty is made five per centum and ten per centum, according to the amount of the income, and an addition of twenty-five per centum penalty to the amount of the duty, when there is a neglect to make a return, is provided for. This penalty is increased to fifty per centum, by the act of 1866. The act of 1866, in amending section 41 of the act of 1864, introduced (14 Stat. 111) a provision, that "taxes may be sued for and recovered, in the name of the United States, in any proper form of action, before any circuit or district court of the United States for the district within which the liability to such tax may have been or shall be incurred, or where the party from whom such tax is due may reside, at the time of the commencement of said action." That provision is re-enacted in section 733 of the Revised Statutes in these words: "Taxes accruing under any law providing internal revenue may be sued for and recovered either in the district where the liability for such tax occurs or in the district where the delinquent resides." By section 919 such suits must be brought in the name of the United States. By section 563 jurisdiction is given to the district courts of all suits at common law brought by the United States and a like jurisdiction is given to the circuit courts by section 629. The act of 1866 did not change in substance the former scheme of procedure, nor did the act of 1867 nor the act of 1870.

The general grounds taken by the defendant are, that, for the years 1862 and 1863, he made returns of his income, and was assessed, and paid the tax assessed; that he was assessed, on his return for 1863, for the special income tax of 1864, and paid the tax assessed;

that, for the subsequent years, he made no returns, but was assessed in the manner prescribed by the statute, and paid the tax assessed and the penalty, except for 1868, when he paid no penalty; and that the United States have no right of action to recover anything more from him in respect of a tax on his income for any of those years. In respect to the instances where there were returns made by him, namely, the years 1862 and 1863 and the special tax of 1864, the answer denies the receipt of any income in excess of the amount on which a duty was paid. The complaint, in respect to each of the amounts of income set forth, alleges that it is the amount in excess of the amount on which the defendant paid a tax or duty. The answer of the defendant, by its form, denies such allegation in respect of all the years subsequent to 1863.

By the provisions for assessment in the act of 1864, the assistant assessor is clothed with power to search out persons owning property liable to pay any duty or tax, and to make a list of the owners, and to value and enumerate the objects of taxation by all lawful ways and means. Power was given to the assessor, in case of neglect to make a return, or if in his opinion a return was false or contained any understatement or undervaluation, to summon the party, or any other person, to examine under oath the party and witnesses, to compel the production of books of account, to enter on the premises of the party, and to make, according to the best information attainable, including that derived from the evidence elicited by the examination, and on his own view and information, the list or return for the party, of property or objects liable to tax, owned by him, and assess the duty thereon. The statute declares, that the lists or returns so made shall be "taken and reputed as good and sufficient lists or returns for all legal purposes." It is then provided, that the individual returns shall be consolidated into a general list, and that public notice shall be given for the hearing of appeals. The notice is to be a notice of the time and place "when and where appeals will be received and determined relative to any erroneous or excessive valuations," and the assessor is "authorized at any time to hear and determine, in a summary way, according to law and right, upon any and all appeals." This appeal, which is an appeal by the party, is required to be in writing and to specify the particular matter respecting which a decision is requested, and to state the ground or principle of error complained of. Power also is given to the assessor to re-examine and determine upon the assessments and valuations, and rectify the same, as shall appear just and equitable. This includes the power to increase the valuation, assessment, or enumeration, on notice to the party interested to appear and object. On the hearing of appeals the assessor is authorized to require by summons the attendance of witnesses and the production of books of account. After the time for hearing appeals has expired, the general lists are to be transmitted to the collector. If the assessor finds that the annual list so furnished to the collector is incomplete, in having persons or objects liable to tax or duty omitted therefrom, he may, from time to time, at any time thereafter, enter on a special list all such objects of duty or taxation, with the names of the persons liable to the tax or duty and the sums payable by each which he shall discover to have been omitted. The general provisions of the statute are made applicable to such special list. The above scheme of the act of 1864 is in substance that of the act of 1862, and continued to be the same for all of the years for which the income tax was imposed. By the act of 1864 (section 44) a provision was introduced authorizing the commissioner of internal revenue, subject to regulations prescribed by the secretary of the treasury, "on appeal to him made, to remit, refund and pay back all duties erroneously or illegally assessed or collected, and all duties that shall appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected." By the act of 1862 (section 35) this refunding was authorized in the case of taxes paid by levy and distraint.

In the special statutory provisions in regard to the income tax, in the act of 1862, it is provided, that the duty on income shall be "assessed and collected." In the act of 1864 the language is, "assessed, collected and paid." In both the word "estimating," is used, in describing the process of arriving at the net annual income. In both acts a penalty is imposed for non-payment of the income tax or duty, and a lien is given therefor, and a remedy by distraint, to enforce such lien.

It is contended, for the defendants, that the statute contains no provision, either in the act of 1862 or in that of 1864, for the collection or payment of any income tax which has not been assessed in the special manner prescribed by the statute; that the United States cannot maintain an action to recover a tax on the annual income of an individual (even if such an action can be maintained at all), until after the sum of such annual income shall have been estimated and assessed in the mode provided by the law creating the tax, and the amount of the tax shall have been computed and ascertained, by applying the rate of the tax to the sum of the income; and that then the action must be for the amount of the tax so computed and assessed. The theory of this view is, that the statute has created a special tribunal of assessment, for the determination of all questions arising in regard to the amount of an income tax; that the decisions of such tribunals are final and conclusive as to both the government and the individual; and that, if payment is made to the collector, of the amount of income tax certified by the assessor, no remedy exists to enforce by action the payment of any further sum.

I regard the positions thus taken on behalf of the defendant, as distinctly held to be untenable, by the decision of the supreme court of the United States in Dollar Sav. Bank v. U. S., 19 Wall. [86 U. S.] 227. Section 120 of the internal revenue act of 1864, as amended by the act of July 13, 1866 (page 138), provides, that "there shall be levied and collected a tax of five per centum on all dividends thereafter declared due as part of the earnings, incomes or gains of any bank or savings institution in the United States, and on all undistributed sums, or sums made or added during the year to their surplus or contingent funds." It also provides, that said banks "shall pay the said tax, and are hereby authorized to deduct and withhold from all payments made on account of any dividends or sums of money that may be due and payable as aforesaid, the said tax of five per centum;" that "a list or return shall be made and rendered to the assessor or assistant assessor, on or before the tenth day of the month following that in which any dividends or sums of money become due or payable as aforesaid, and said list shall contain a true and faithful account of the amount of taxes as aforesaid," and it is to be verified by oath; that, for any default in making such list or return, the bank making it shall forfeit $1,000 as a penalty, and that, "in case of any default in making or rendering said list or return, or of any default in the payment of the tax as required, or any part thereof, the assessment and collection of the tax and penalty shall be in accordance with the general provisions of law in other cases of neglect and refusal." The scheme of this statute is the same as the scheme of the statute in regard to the income tax—a list or return to be made by the party charged with the tax; a penalty for not making it; in default of making the list or return or paying the tax, an assessment and collection of the tax and the penalty through the machinery of the assessor and the collector, under the general provisions of law for other such cases; and, in all cases, collection according to a list passing from the office of the assessor to the collector. In respect to the income tax, the act of 1862 provides (section 93) that in case of neglect or refusal to make a return, the assessor or assistant assessor shall assess the amount of income and proceed thereafter to collect the duty thereon, "in the same manner as is provided for in other cases of neglect and refusal to furnish lists or schedules, in the general provisions of this act;" and the act of 1864 provides (section 122) "that, in case of any default in making or rendering said list or return, or of the payment of the duty or any part thereof, as aforesaid, the assessment and collection of the duty and penalty shall be made according to the provisions of law in other cases of neglect and refusal."

The United States brought an action of debt, founded on the above statute, against the savings bank (which was a banking institution created by the laws of Pennsylvania, without stockholders or capital stock, and doing the business of receiving deposits to be loaned or invested for the sole benefit of its depositors, and whose charter authorized it to retain a contingent fund, accumulated from its earnings, to the extent of ten per centum of its deposits, for the security of its depositors), alleging that it had earned and added to such contingent fund or undistributed sum, from July 13th, 1866, to December 31st, 1870, an aggregate specified sum of money, made up of several sums of earnings, which were added semi-annually, during such period, on the first days of July and January in each year, to such contingent or undistributed fund, and that it owed to the United States a tax of five per centum on such aggregate sum. The bank had never made any return relative to any such sum. It was not only not required by the commissioner of internal revenue to do so, but three successive commissioners of internal revenue, in 1867, 1870 and 1871, had decided that the bank was not liable to a tax on any sum added to its retained and undistributed funds. A subsequent commissioner, in 1872, adopted a different construction of the statute, and the action referred to was brought, in the circuit court for the Western district of Pennsylvania. A judgment was rendered by that court, in favor of the United States, against the bank, for the amount of the tax, at five per centum, $5,356.00, without interest from the semi-annual periods when the taxes became due and payable, such interest being disallowed because the failure of the bank to pay the tax had been induced by the rulings of the several commissioners. After judgment, the bank took the case to the supreme court, by writ of error, and assigned for error, that the statute did not authorize the levy and collection of the tax, and that an action of debt was not maintainable for the recovery of the tax. On the argument of the case. before the supreme court, it was contended, for the bank, that the statute did not authorize the levy and collection of the tax at all; and that, if it did, the tax could not be recovered by the action of debt brought. As parts of the latter proposition, it was contended, for the bank, that, as the statute afforded a remedy for the assessment and collection of the tax, through the machinery of the assessor and the collector, an action of debt would not lie to recover the tax; that, as the statute created the right, and provided a particular remedy for vindicating such right, no other remedy than that provided by the statute could be used; and especially, that, as the statute provided, that, in case of default in making a return or paying the tax, the assessment and collection of the tax and penalty should be in accordance with the general provisions of law in other cases of neglect and refusal (namely, the making by the assessor of lists containing specified particulars, authority in the assessor, within fifteen months after the 13th of July, 1866, or from the time of the delivery of the list to the collector, to make special additional

lists, and the delivery of the lists to the collector, as his warrant to levy the tax on the property of the delinquent taxpayer), no action of debt would lie to recover the tax. It was further contended, for the bank, that, even if an action of debt could be sustained, to recover a tax duly assessed, notified and demanded, it did not appear that any one of the taxes in question was ever duly assessed; that, if an attempt to assess them had been made, the assessor could not have gone back of the term of fifteen months before he delivered his last list to the collector; and that, because the taxes demanded in the suit had never been regularly assessed, the suit would not lie. In the circuit court, the only point considered had been whether the statute required the bank to pay the tax.

The opinion of the supreme court in the case was delivered by Mr. Justice Strong, and was concurred in by Chief Justice Waite, and by Justices Clifford, Swayne, Miller, Davis, and Hunt. In the opinion, it is first held, that the statute authorized the levy and collection of the tax. The opinion then passes to consider the question whether an action of debt could be maintained to recover the tax, and says that the question must be answered in the affirmative. The opinion discusses and meets the propositions urged, that the statute which imposed the tax provided a special remedy for its assessment and collection; that, in such case, no other remedy than that afforded by the statute could be used; that a return was required and a penalty imposed for a default in making it; that, in case of default in making the return or paying the tax, the statute provided that the assessment and collection of the tax and penalty should be in accordance with the general provisions of law in other cases of neglect and refusal, such provisions being assessment, delivery of lists to collector, and distraint; and that, where a statute creates a right and provides a particular remedy for its enforcement, the remedy is generally exclusive of all common law remedies. Speaking of this latter rule, the opinion says, that it applies when the statute, by providing a particular remedy, manifests an intention to prohibit other remedies, and when any one to whom the statute is a rule of conduct seeks redress for a civil wrong; that, in such case, there is a presumed statutory prohibition, confining the party to the remedy pointed out in the statute, and forbidding him to make use of any other; that, by the internal revenue law the United States are not prohibited from adopting any remedies for the recovery of a debt due to them which are known to the laws of the state; that the prohibitions, if there are any, either express or implied, in the statute, may be obligatory on tax collectors, and prevent any suit at law by them, but they are not rules for the conduct of the government of the United States; and that it is not prohibited, by anything in the act of 1866, from employing any common law remedy for the collection of its dues. The opinion cites de-

cisions both in England and in the United States, holding that actions to recover duties on imports may be maintained, although the statute provides a different remedy for enforcing payment. It also cites, as authorizing the action, the provision, before referred to, in the act of 1866 (page 111), now section 733 of the Revised Statutes, respecting suits for taxes, in the name of the United States.

The opinion then passes to consider the objection that there had been no assessment. It says: "Nor is there anything in the objection that the taxes for which judgment has been recovered in this case had not been assessed. No other assessment than that made by the statute was necessary to determine the extent of the bank's liability. An assessment is only determining the value of the thing taxed and the amount of the tax required of each individual. It may be made by designated officers or by the law itself. In the present case the statute required every savings bank to pay a tax of five per cent. on all undistributed earnings made or added during the year to their contingent funds. There was no occasion or room for any other assessment. This was a charge of a certain sum upon the bank (Attorney-General v. ——, 2 Anst. 558), and, without more, it made the bank a debtor. We think, therefore, the second assignment of error cannot be sustained." The court affirmed the judgment of the circuit court. Justices Bradley and Field dissented from the judgment of the court, on the ground that a tax of the kind in question ought to be first entered on the assessment roll before an action would lie for it; and that the assessment roll should be regarded as conclusive as to the persons or things liable to taxation. In the opinion delivered by the court it is said, that the question whether an action of debt was maintainable to recover the tax, not having been raised in the circuit court, it was not clear that it could be raised first in the supreme court. But it was allowed to be raised, and it was argued, and the opinion of the court as well as the dissenting opinion discuss the question and adjudicate upon it. The opinion of the court holds the point taken for the bank, that the tax had not been entered on an assessment list, not to be a good one, while the dissenting opinion is placed solely on the ground that the action would not lie, because the tax had not been entered on an assessment list.

It is impossible not to regard the decision in Dollar Sav. Bank v. U. S. [supra] as completely covering the present case. The statutes imposing the two taxes are substantially identical in their provisions. In each a tax is imposed by the statute. The tax is not imposed by any officer or by any of the machinery or methods organized by the statute. The statute itself declares, in each case, that a tax of a fixed specified percentage shall be levied, collected and paid on a specified object of taxation. In the one case it is undistributed earnings added during the year to the contin-

gent fund of a bank. In the other case it is the annual gains, profits or income of the individual. In the one case it is five per centum on such earnings. In the other case it is equally a fixed and specified per centum on the income of each individual, according to its amount. The liability of the bank is determinable by ascertaining what in fact was the amount of its undistributed earnings added during the year to its contingent fund, and calculating the tax thereon at the rate of five per centum. The liability of the individual for income tax is determinable by ascertaining what in fact was the amount of his income during the year, according to the definition given in the statute itself, and including and deducting just what the statute allows and requires to be included and deducted, and calculating the tax thereon at the rate of five per centum, or seven and a half per centum, or ten per centum, according to the amount of income so arrived at. The extent of the liability of the individual for income tax is defined by the statute, equally with the extent of the liability of the bank for the tax on undistributed earnings. In each case it is necessary, in an action of debt for the tax, to resort to sources of information outside of the statute, to ascertain the amount on which the per centum of tax fixed by the statute is to be calc·¹ated. In the case of the bank, its books and the testimony of its officers, and, perhaps, other means of information, may and must be resorted to. In the case of a suit for income tax, the books and accounts of the individual, and his testimony, and, perhaps, other means of information, may and must be resorted to. The difference between the two cases, in that respect, if there be any, will be, in every case. one of degree merely, not of principle. The statute, in imposing the per centum of tax on the income of the individual, makes a charge on him of a sum which is certain for the purposes of an action of debt, because it can be made certain through the action of a judicial tribunal, by following the rules laid down in the statute. That is the principle of the decision in the case of the bank, and it controls the present case.

It is contended, for the defendant, that the authority of the decision in the Savings Bank Case is confined to the single question as to whether the bank was subject to the tax, and that everything else, in the opinion of the court, is obiter dictum. It is further contended, that, whatever the opinion of the court did decide or did sanction, it did not decide that an action could be maintained except when the tax was a sum certain ascertained before the suit; nor that, in a case where the value of the thing to be taxed is uncertain or indefinite, so as to require discretion or judgment in determining that value, an assessment by the assessor can be dispensed with; nor that the amount of the tax must not be adjudged by the assessor before an action for its recovery can be maintained; nor that, in a case where

the income, gains, and profits of a year are to be estimated, and deductions are to be estimated, and the powers of discretion and judgment vested in the assessor are commanded to be exercised, an assessment by him can be dispensed with. I cannot concur in any of these views. I regard the Savings Bank Case as deciding every one of the questions referred to, and as deciding all of them adversely to the positions relied on by the defence in this case.

The foregoing considerations dispose of the view urged, that the taxes sued for in this case cannot be recovered because they have never been entered on any assessment list. There remains the further question, whether the fact that a less amount of tax than that now claimed was entered on a list by the assessor, whether after a return by the defendant, or in default of a return, and that such less amount of tax was paid, whether with or without an added penalty, is a bar to a recovery by the United States of the difference between the list tax and the true tax.

It is contended, for the defendant, that the making of the list in his case. and the collection of the tax thereon and thereby, operated as an election by the United States between the statutory process and the remedy by action, so as to debar the United States from now prosecuting the remedy by action for the deficiency of true tax, and that the action of the assessor, under the authority given him by the statute to value the subject of taxation, and apply to it the rate of taxation and determine the amount of the tax, amounted to an adjudication of the whole question, and is not subject to review in this action.

The case of U. S. v. Hazard [Case No. 15,-337], decided by Mr. Justice Clifford and Judge Knowles, in the circuit court for the district of Rhode Island, is, in all respects, like the present one. The United States brought an action of debt against Hazard. to recover a tax on his income for the year 1868. the action being founded on the same statutory provisions on which the rights of action claimed in the eighth, ninth and tenth counts in the present case are founded. The defendant pleaded 'the general issue and three special pleas, each of which special pleas set up, in substance. as a bar to the recovery, the payment by the defendant of a tax on his income for the year 1868, on an assessment made by the proper assistant assessor, together with a penalty of fifty per centum on account of his failure to make a return. The United States demurred to the special pleas. and contended that the principles of construction and decision established and promulgated by the supreme court in Dollar Sav. Bank v. U. S. [supra], clearly recognized and affirmed the right of action in the case against Hazard. as against the bar set up in the special pleas. The defendant contended to the contrary. Judge Knowles delivered the opinion of the court (which consisted of Mr. Justice Clifford and himself), and in it says, speaking for and

of the court: "Its conclusion is, that the case above cited is, as claimed by the plaintiff, a case directly in point, to be construed and respected as a precedent decisive of the point presented, controlling the action of this court and compelling a sustaining of the plaintiff's demurrers; and this, too, even were the principles embodied in that precedent as unaccordant with the views of the presiding judge as with those of his associate of this term." The language thus quoted means, that the views set forth in the opinion of the supreme court, delivered by Mr. Justice Strong, are in accordance with the views of Mr. Justice Clifford as to the matters embraced in that opinion, and are not in accordance with the views of Judge Knowles as to those matters; but that both Mr. Justice Clifford and Judge Knowles regard the principles established and promulgated in that opinion as decisive of the question, that the assessment of an income tax and a penalty, and their payment, do not bar an action for the difference between the tax so paid and the true tax. Mr. Justice Clifford was one of the seven judges who concurred in the opinion of the court delivered by Mr. Justice Strong. His statement, made in the opinion of the court delivered by Judge Knowles, that the principles of construction and decision established and promulgated in the Savings Bank Case are decisive of the point presented in the Hazard Case, is entitled to great weight, as he must be presumed to know the views of the justices who concurred in such opinion, as to the scope and extent and meaning of the principles thus established. In the opinion of Justices Bradley and Field, who dissented in the Savings Bank Case, the doctrine is asserted, not only that there should be an assessment-roll to authorize a suit for a tax, but that "the assessment-roll should be regarded as conclusive as to the persons or things liable to taxation." In opposition to this stands the statute before cited, providing that the United States may collect by suit taxes due to it. The income taxes are due without any assessment other than that made by the statute, and the taxes sued for are not taxes covered by or embraced in the taxes assessed and paid. The further defences now in question only set up that the defendant paid what was assessed. The United States do not sue for any tax which was assessed or for any amount of tax which was paid. The defendant does not set up that he paid any part of the tax sued for, but only that he paid as tax some money which is not sued for.

The proposition, that the United States elected between the statutory process and this action, is not tenable. They pursued the statutory process, and thereby collected a part of the tax. They now seek to collect the rest. Equally unsound is the proposition, that the action of the assessor was an adjudication barring this suit. Both of these propositions are inconsistent with the views expressed in the opinion of the court in the Savings Bank Case.

If the United States, as is there held, are not to be regarded as bound to resort to the statutory remedy, they cannot be held to be concluded, by a resort to it, from collecting by a suit taxes which they have not collected by means of such resort. So, the decision of the assessor or the assistant assessor as to the assessment or tax can hardly be denominated a judicial construction, any more than the decisions of the commissioner of internal revenue, which, in the opinion of the court in the Savings Bank Case, it is said, "can hardly be denominated judicial constructions."

The view which is to be deduced from the decision of the supreme court in the Savings Bank Case is, that the remedy by assessment and collection of taxes, through the machinery of assessors and collectors, is a remedy for the prompt, periodical ascertainment and collection of taxes. subject always to a concurrent right to bring a suit for the tax, such latter right being one which exists both to collect a tax in the absence of any use of the statutory machinery, and to collect it where the statutory machinery has been used and has failed to collect the true amount of tax. Whether the tax be one on income, or on undistributed earnings of a bank added to its contingent fund, or on a legacy or a succession, or on any other subject of tax, where a tax of a fixed percentage is imposed by the statute on a subject or object which is so definitely described in the statute that its amount or value, on which the fixed per centum is to be calculated, can be ascertained and determined, on evidence, by a court, a suit for the tax will lie, without an assessment, and the defence set up in this case is no bar to the suit. Such I understand to be the purport of the decisions of the supreme court. A scheme of taxation like that found in the federal statutes, where there is imposed by the statute a fixed tax, by a percentage on an amount of money, the elements for ascertaining which are definitely designated in the statute, or a fixed tax of a given amount on a designated object or subject of tax, is a very different scheme of taxation from that which prevails generally in the states, where power is confided to public officers to value property, real or personal, and to fix the percentage of tax thereon. There no tax is imposed till the officers act, and no suit for any tax will lie till after such action by the officers.

The doctrine of the Savings Bank Case is no new doctrine. In Meredith v. U. S., 13 Pet. [38 U. S.] 486, in 1839, an action was brought by the United States to recover duties on imported goods, under a statute which provided that there should be "levied, collected, and paid" the several duties prescribed by the statute, on goods imported into the United States. The statute gave a lien on the goods for the duties, and a bond was given as security for the duties. The question arose, whether the importer became personally indebted for the duties, or whether the remedy of the United States was confined to the lien and the bond.

The court held, that, under such a statute, the duties on imported goods constitute a personal debt due to the United States from the importer, and that the debt accrues when the goods have arrived at the proper port of entry. The statutes in regard to duties on imports are like the statutes in regard to internal revenue, in the particulars under consideration. In both, the statute imposes the tax or duty, by saying that there shall be levied, collected, and paid, a designated rate of tax or duty, either a percentage on a valuation, or a quantum per weight, or measure, or numeration. In both cases, where the tax or duty is a percentage on the valuation, the valuation has to be ascertained by some means. Yet in both cases the right to the tax or duty accrues before the valuation is ascertained, because the statute lays the fixed rate of duty on the goods or on the income.

The provision before cited from section 44 of the act of 1864, in regard to paying back duties erroneously or illegally assessed, was re-enacted by the act of 1866 (page 111), and is embodied in section 3220 of the Revised Statutes, to the effect, that "the commissioner of internal revenue, subject to regulations prescribed by the secretary of the treasury, is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected; also to repay to any collector or deputy collector the full amount of such sums of money as may be recovered against him in any court for any internal taxes collected by him, with the cost and expenses of suit." Section 3689 (page 730) provides, that there is appropriated, out of any moneys in the treasury not otherwise appropriated, for the purpose of refunding and paying back "duties erroneously or illegally assessed or collected under the internal revenue laws," such sum as may be necessary for such purpose, and that such appropriation shall be deemed a permanent annual appropriation. These provisions show, that an assessment and a collection of a tax thereunder are not regarded as concluding the taxpayer. Is there any reason for holding that it can be intended that an assessment and payment of a tax should conclude the United States, except as to the amount of tax paid? Certainly, there can be none. To so hold would be to say that concealment or mistake by the taxpayer, or neglect or collusion on the part of the assessor, is to operate as a binding judicial decision, and not only deprive the government of the taxes to which the statute declares it to be entitled, but give to taxpayers who do not make correct returns an advantage over those who do.

In Philadelphia v. The Collector, 5 Wall. [72 U. S.] 720, it was held by the supreme court, that an erroneous assessment may be questioned, in a suit brought by a taxpayer against a collector, to recover back duties or taxes erroneously assessed under the internal revenue statutes, and paid under protest. The statute may require that there shall be an appeal before suit is brought, but that does not alter the principle.

In Clinkenbeard v. U. S., 21 Wall. [88 U. S.] 65, it was held by the supreme court, in a suit brought by the United States to recover an assessed tax, in which the assessment was put in evidence by the United States, and relied on to sustain a recovery, that the defendant could give evidence to show that the assessment was erroneous.

If an assessment may be questioned by the taxpayer, in a suit brought by him to recover back taxes paid according to the assessment, and in a suit brought by the United States against him on the assessment, it is difficult to see why, in a case where the United States are claiming to recover taxes omitted from the assessment, the assessment shall be regarded as conclusive against the United States. In U. S. v. Halloran [Case No. 15,286] the circuit court for this district, held by Judge Shipman, decided, that an assessment was not final and conclusive against the United States, in a case where the tax assessed had been collected by distraint, and the United States sued to recover, not any tax assessed, but the difference between the tax assessed and paid and the true tax.

All the legal propositions contended for on the part of the defendant have thus been considered. The importance of the questions involved, and the earnestness and ability with which they have been discussed on both sides, demanded that they should receive full attention. As in the Hazard Case, the stress of the argument on the part of the defendant has been to attack the decision of the supreme court in the Savings Bank Case. In the argument for the defendant it is said, that the supreme court, in that case, invented a judicial device to save the loss of a tax. It may safely be left to that court to vindicate, if necessary, its decision. It is the duty of this court faithfully to interpret that decision, and apply it to other cases as they arise.

The demurrer interposed by the plaintiff is sustained.

[Subsequently the defendant moved for a bill of particulars of the plaintiff's complaint, which motion was denied. See Case No. 16,521.]