## UNITED STATES v. NASHVILLE, C. & ST. L. RY.

(Circuit Court of Appeals, Sixth Circuit.   April 2, 1918.)

No. 3086.

1. INTERNAL REVENUE ⟨⟩25—CORPORATIONS—TAXES—"FALSE."
   Under Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112, imposing an excise tax
   of 1 per cent. on the net income of corporations, and providing for a new
   assessment in case of false and fraudulent reports, and for recovery of
   additional taxes, the word "false" means untrue or incorrect, and does
   not necessarily mean "intentionally" or "fraudulently false."
   [Ed. Note.—For other definitions, see Words and Phrases, First and
   Second Series, False.]

2. INTERNAL REVENUE ⟨⟩28—PAYMENT—ACTION.
   It is the general rule, applicable, not only to customs duties, but to
   internal revenue taxes, that a common-law action of debt lies in favor
   of the government whenever, by accident, mistake, or fraud, the govern-
   ment has not received full payment of duties and excise taxes.

3. INTERNAL REVENUE ⟨⟩28—REMEDIES—STATUTORY REMEDIES.
   In an action to recover internal revenue taxes, such as an excise tax
   on corporations, the rule which denies the use of any but the statutory
   remedy has no application to the general government, unless clearly and
   specifically so declared.

4. INTERNAL REVENUE ⟨⟩28—EXCISE TAXATION—ACTIONS.
   Excise taxes, under Act Aug. 5, 1909, differ from state ad valorem
   taxes, in that in the former the law itself imposes the specific tax, while
   in the latter there is no tax imposed until the officers act, and no suit
   for any tax will lie until after such action.

5. INTERNAL REVENUE ⟨⟩28—CORPORATE EXCISE TAXES—ACTION.
   Act Aug. 5, 1909, § 38, imposing on corporations an excise tax of 1
   per cent. of their net income, to be determined by deducting from the
   gross income operating expenses and losses, including a reasonable al-
   lowance for depreciation of property, and requiring the corporation to
   make an annual sworn return, by subdivision 5 authorizes the Commis-
   sioner of Internal Revenue to amend a return, or make a return where
   none has been made, while subdivision 8 expressly extends and makes
   applicable to the tax all laws relating to the collection, remission, and
   refund of internal revenue taxes so far as applicable. Rev. St. § 3213
   (Comp. St. 1916, § 5937), declares that taxes may be sued for and re-
   covered in the name of the United States in any proper form of action.
   Held that, regardless of whether the failure to make a reassessment
   would preclude imposition of penalties, yet, as the act itself imposes the
   tax, an action may be maintained against a corporation for the 1 per
   cent. excise tax, based on items of income omitted, after the expiration
   of the period in which the Commissioner was authorized to amend the
   return.

6. INTERNAL REVENUE ⟨⟩28—CORPORATE EXCISE TAXES—ACTION—DECLARA-
   TION.
   A declaration in an action by the United States against a railroad cor-
   poration, which after alleging the filing of returns of net income by
   the corporation, averred that the returns were incorrect, because includ-
   ing deductions from gross income of alleged charges to expenses which
   were not necessary expenses, as well as charges to depreciation which
   were not reasonable allowances, and which were not charged against
   the capital valuation of the roadway on the railroad corporation's books,
   is a sufficient averment that the deductions were not authorized within
   Act Aug. 5, 1909, § 38, it being specifically alleged that the first deduc-
   tions were not necessary expenses, and that the latter were not reason-

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

able allowances for depreciation; and hence the declaration is not subject to attack on the ground that the act did not require items claimed property depreciation to be charged against the capital valuation on the corporate books.

In Error to the District Court of the United States for the Middle District of Tennessee; Edward T. Sanford, Judge.

Action by the United States against the Nashville, Chattanooga & St. Louis Railway. A demurrer to the declaration was sustained, and the actions dismissed, and plaintiff brings error. Reversed and remanded, with directions.

Lee Douglas, U. S. Atty., and Marvin Campen, Asst. U. S. Atty., both of Nashville, Tenn., for the United States.

Claude Waller and Fitzgerald Hall, both of Nashville, Tenn., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SESSIONS, District Judge.

KNAPPEN, Circuit Judge. In June, 1916, the United States, under the direction of its Commissioner of Internal Revenue, brought suit to recover from defendant an excise tax of 1 per cent., claimed to be due from it for each of the years 1909 and 1910, respectively, under section 38 of the Revenue Act of August 5, 1909 (36 Stat. 11, 112, c. 6). The declaration alleged the filing by defendant with the Commissioner of Internal Revenue on February 25, 1910, and February 21, 1911, of returns of its net income for the years 1909 and 1910, respectively; that both returns were incorrect as to the amount of defendant's income; that the return for 1909 was incorrect, in that it included, as an item of deduction from gross income, an alleged charge of $26,000 to expenses which was not a necessary expense actually paid out of income in the maintenance and operation of its business and properties; that the returns for both years were incorrect, in that they included charges to depreciation of roadway, amounting to $249,-024.54 for the year 1909 and $239,229.70 for the year 1910, which were not charged against the capital valuation of the roadway on its books, and were not a reasonable allowance for depreciation of the roadway within the meaning of the act; that the three items named were disallowed by the Commissioner of Internal Revenue and held by him to be incorrectly charged, and that they were in fact not correct and proper deductions from gross income, and that the total amounts so deducted, which should have been included as net income in said returns, were for the year 1909 $275,024.54 and for 1910 $239,-229.70; that the defendant was thus indebted to the United States, and subject to pay an excise tax of 1 per cent. upon the amounts stated: that it had failed and refused to make payment, and that the alleged taxes were thus due from defendant and payable by it to the United States.

The Revenue Act in question (section 38) makes every corporation to which it applies "subject to pay annually" a special excise tax of 1 per cent. on its net income, to be determined by deducting from gross income, among other things, operating expenses, losses sustained, "in-

cluding a reasonable allowance for depreciation of property," interest on indebtedness, and taxes. It requires from the corporation annual sworn returns covering the items of claimed deduction named, as well as others, with provision for further information, if no returns are made, or if those made are incorrect, with authority to the Commissioner (through his agent) to examine the corporation's books, and with authority (subdivision 5) to amend a return, or make a return where none has been made, and in the case of false or fraudulent reports, upon the discovery thereof, at any time within three years after the tax is due, to make a new assessment, accompanied by penalties for failure to make prompt payment, with further provision for criminal punishment in case of fraudulent returns, and for addition of 100 per cent. of the original tax in case of return made with false or fraudulent intent.

Defendant demurred to the declaration upon several grounds, which we thus summarize: (1) As to each of the three items in question—that the declaration fails to show that within three years from March 1, 1910, and March 1, 1911, respectively, the Commissioner disallowed the deductions so shown in its returns or held them to be incorrectly charged, or that the commissioner within such three years discovered any false, fraudulent, or erroneous returns, or that the Commissioner has made any return upon information or any assessment thereon, or any assessment against defendant of the amount sued for, and that without such assessment no recovery can be had; (2) as to the three classes of items—because no fact is averred tending to show that they were not necessary expenses of operation, actually paid out in the year in question, or reasonable allowances for depreciation, as the case may be, or that the deductions or allowances were not reasonable or legally made; (3) as to the items of alleged depreciation—because the Excise Act does not require that the items shall be charged against the capital valuation on defendant's books in order to justify its deduction from gross income in arriving at net income, but only requires that the amount so deducted shall be a reasonable allowance.

The trial judge sustained the grounds of demurrer which we have included in Nos. 1 and 2 above, and dismissed the suit without passing upon the remaining ground, resting his action upon the propositions that the Excise Act does not fix a specific charge of a sum certain to be paid without an assessment, and which can be collected as a debt owing to the United States, nor does it assess any definite tax, but merely subjects the corporation to the payment of a tax to be ascertained and assessed as specifically provided by the act; such assessment involving a determination of the amounts to be allowed as expenses of maintenance and operation, as well as reasonable allowance for depreciation of property.; that no assessment can be made by the Commissioner, except upon a return by the corporation, or, in its default, by the Commissioner; that a reassessment, in case of an untrue return, can validly be made only within three years after the return is due by law; that such assessment is a legislative act, and cannot be performed by a court; and that, inasmuch as the declaration fails to show the making by the Commissioner of corrected returns of defendant's net income within three years after due, or the making of a

new assessment, upon corrected returns or otherwise, the United States is without remedy.

[1, 2] The declaration clearly seeks recovery of taxes on the ground that they are owing the United States by reason of untrue returns by the defendant with respect to expenses and depreciation. The word "false," when used in this connection in the statute, means "untrue" or "incorrect," and does not necessarily mean intentionally or fraudulently false. Eliot Nat. Bank v. Gill (D. C.) 210 Fed. 933, 939; Id., 218 Fed. 600, 602, 134 C. C. A. 358 (C. C. A. 1); National Bank v. Allen (C. C. A. 8) 223 Fed. 472, 478, 139 C. C. A. 20. It is the general rule, applicable, not only to customs duties, but to internal revenue taxes, that a common-law action of debt lies in favor of the government whenever, by accident, mistake, or fraud, no duties or short duties have been paid (Meredith v. United States, 13 Pet. 486, 493, 10 L. Ed. 258; Dollar Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80; United States v. Tilden, 9 Ben. 368, Fed. Cas. No. 16,519; United States v. Chamberlin, 219 U. S. 250, 260, 31 Sup. Ct. 155, 55 L. Ed. 204); and thus that the government may recover a personal judgment for a tax, either in a sum certain or when readily reducible to certainty, whenever there exists a duty to pay, provided always another remedy has not been made exclusive (United States v. Chamberlin, supra, 219 U. S. at page 262, 31 Sup. Ct. 155, 55 L. Ed. 204; Stockwell v. United States, 13 Wall. 531, 542, et seq., 20 L. Ed. 491; and see Alaska Mining Co. v. Alaska [C. C. A. 9] 236 Fed. 64, 149 C. C. A. 274).

Assuming, then, for the moment, that the excise statute in question does not make the remedy by reassessment exclusive, the defendant's duty to pay lawful taxes omitted because of its default in making an untrue return, and the government's right to personal action therefor are obvious.

[3] The question of first importance thus is whether the statute makes the remedy by way of another assessment on the part of the Commissioner, exclusive of all other remedies. We approach the decision of this question, having in mind that the rule which denies the use of any but the statutory remedy has no application to the general government, unless clearly and specifically so declared. Dollar Savings Bank v. United States, 19 Wall. 227, 238, 239, 22 L. Ed. 80; United States v. Stevenson, 215 U. S. 190, 197, 30 Sup. Ct. 35, 54 L. Ed. 153; United States v. Chamberlin, supra, 219 U. S. at page 261, 31 Sup. Ct. 155, 55 L. Ed. 204.

[4, 5] The Excise Act in question does not expressly make such declaration, and the argument of necessary implication to that effect must reckon not only with the general principles we have referred to, but to the provision (section 38, subd. 8) which expressly extends and makes applicable to the tax in question "all laws relating to the collection, remission and refund of internal revenue taxes so far as applicable to and not inconsistent with the provisions of this section"; and the Internal Revenue Act then and now in force expressly declares that "taxes may be sued for and recovered in the name of the United States, in any proper form of action, before any Circuit or District Court of the United States for the district within which liability to

such tax is incurred, or where the party from whom such tax is due resides at the time of the commencement of the said action." Rev. St. § 3213, U. S. Comp. St. 1916, § 5937. The provision of the following section, requiring the sanction of the Commissioner to suits for taxes, was complied with in the instant case. We thus come to the question whether the provision just quoted is inconsistent with the assessment and administrative provisions of the act of 1909.

Upon careful consideration of the provisions of the act and the pertinent decisions, we are of opinion that there is no such inconsistency. The reassessment provisions, so far as requiring statement, are these:

By the fourth subdivision it is provided that:

"Whenever evidence shall be produced before the Commissioner of Internal Revenue which in the opinion of the Commissioner justifies the belief that the return made by any corporation * * * is incorrect, * * * the Commissioner of Internal Revenue may require from the corporation * * * such further information * * * as he may deem expedient, * * * and for the purpose of ascertaining the correctness of such return * * * is hereby authorized * * * to examine any books and papers bearing upon the matters required to be included in the return of such corporation, * * * and upon the information so acquired the Commissioner of Internal Revenue may amend any return or make a return where none has been made."

By the fifth subdivision, to which we have already referred, the reassessment made by the Commissioner is required to be paid by the corporation immediately upon notification of its amount. There seems no room for doubt that, had actual reassessment been made by the Commissioner, to correct an untrue return discovered within the three-year period, personal action at law would lie in favor of the United States. The actual making of reassessment within three years has been held not necessary. National Bank v. Gill (D. C.) supra, 210 Fed. at page 940; Id., 218 Fed. at page 602, 134 C. C. A. 358.

But, assuming that administrative reassessment, including its incidents of possibly added penalties in substantial amounts and its summary method of enforcement (against which a corporation has no effective remedy save by suit to recover back), cannot be made after the three-year period, it by no means follows that the act intended to take from the government power to enforce the payment of a tax to which a corporation is subject, through judicial process and without addition of penalty, whereby the corporation is given full opportunity to be heard in its defense in advance of enforcement—merely because the untrue return was not discovered and corrected within the three-year period—especially in view of the express provision of subdivision 8 above quoted, the general policy of the law to promote, rather than to obstruct, the collection of public revenue, and the commonplace proposition that, in the absence of statute otherwise, time does not run against the government.

We think the adjudicated cases opposed to such construction. In Dollar Savings Bank v. United States, supra, the right of the government to maintain an action of debt for the recovery of certain taxes for several previous years which had not been returned or assessed as required by law, by reason of the Commissioner's construction of

the Revenue Act, as not making such taxes payable, was sustained as against a dissent by two members of the court on the ground that action would not lie for the tax unless first entered on the assessment roll. Express authority to sue was found in the statute we have already quoted as section 3213 of the Revised Statutes.

In United States v. Chamberlin, supra, the government sued for the amount of a stamp tax upon execution of conveyances under War Revenue Act June 13, 1898, c. 448 (30 Stat. 448–470), as amended by Act March 2, 1901, c. 806 (31 Stat. 941), which required the assessment levy, and collection of a percentage tax upon the "consideration *or value*" [1] of the property conveyed, and upon the claim by the government that the actual consideration for the conveyance *and the value of the lands* was a certain sum in excess of the consideration recited in the conveyance and upon which the payment by stamp was made. In sustaining the right of action it was said that the penalties provided by the act for its violation did not constitute the exclusive remedy of the government, and were "without application where, for any other reason, the tax has not been paid and thereby the government has lost its revenue" (219 U. S. 265, 31 Sup. Ct. 160 [55 L. Ed. 204]), and that an action for a personal judgment for the tax lies "whenever there is due a sum either certain or readily reduced to certainty" (219 U. S. 262, 263, 31 Sup. Ct. 159 [55 L. Ed. 204]). Here again express authority to sue at law was found in section 3213 of the Revised Statutes. See comment on this decision in Billings v. United States, 232 U. S. 261, at page 287, 34 Sup. Ct. 421, 58 L. Ed. 596, involving action for tonnage tax on foreign-built yachts, under section 37 of the Revenue Act here in question.

If these comprehensive decisions are not conclusive of the instant case, it can only be because the ascertainment of the taxes under consideration did not involve the exercise of judgment and administrative discretion, as is alleged to be the case here with respect to the allowance of items both of operating expense and depreciation—a subject to which we shall later refer.

In United States v. Tilden, 9 Ben. 368, Fed. Cas. No. 16,519, the government sued for collection of income taxes assessed under the act of July 1, 1862 (12 Stat. 473–475, c. 119), the joint resolution of July 4, 1864 (13 Stat. 417), the act of June 30, 1864 (13 Stat. 281–285), as amended by the acts of March 3, 1865 (13 Stat. 479–481, c. 78), July 13, 1866 (14 Stat. 137–140, c. 183), March 2, 1867 (14 Stat. 477–480, c. 169), and July 14, 1870 (16 Stat. 257–261, c. 255). As against some of the taxes it was urged that they were barred by the facts that a return had been made for the years in question, taxes assessed thereon and paid, and no imperfection discovered until some time later; as to others, that no return had been made, and the amount of the tax and the penalty, or only an amount of tax, had been assessed against and paid by defendant. Judge Blatchford (later Justice of the Supreme Court of the United States), in a carefully reasoned opinion, in which the Dollar Savings Bank and other pertinent cases were discussed, held that neither of the facts just stated barred the suit, and

[1] All italics in this opinion are ours.

that the United States had a right of action for the income tax without a prior assessment in the mode specified in the act creating the tax, using this language:

"The extent of the liability of the individual for income tax is defined by the statute, equally with the extent of the liability of the bank for the tax on undistributed earnings. In each case it is necessary, in an action of debt for the tax, to resort to sources of information outside of the statute, to ascertain the amount on which the per centum of tax fixed by the statute is to be calculated. In the case of the bank, its books and the testimony of its officers, and perhaps other means of information, may and must be resorted to. In the case of a suit for income tax, the books and accounts of the individual, and his testimony, and perhaps other means of information, may and must be resorted to. The difference between the two cases, in that respect, if there be any, will be, in every case, one of degree merely, not of principle. The statute, in imposing the per centum of tax on the income of the individual, makes a charge on him of a sum which is certain for the purposes of an action of debt, because it can be made certain through the action of a judicial tribunal, by following the rules laid down in the statute. That is the principle of the decision in the case of the bank, and it controls the present case."

In the Chamberlin Case, supra (219 U. S. 263, 264, 31 Sup. Ct. 155, 55 L. Ed. 204), this language of Judge Blatchford was quoted with complete approval. In one of the income tax statutes involved in the Tilden Case, provision was made for deducting from gross income, in ascertaining taxable income, "losses on sales of real estate purchased within the year for which income is estimated." In another of the acts, deduction was provided for of "all his losses actually sustained during the year arising from fires, floods, shipwreck, or incurred in trade, and debts ascertained to be worthless, but excluding all estimated depreciation of values."

In our opinion the cases cited are directly opposed to the proposition that an assessment by the Commissioner is a prerequisite to the right to sue. The declaration of the excise act, that every corporation subject to its terms "shall be subject to pay annually a special excise tax" there defined and described, as effectually denotes a duty to pay and a corresponding right of recovery by suit as do the words "there shall be levied, collected and paid" in the Customs Act of 1816 (considered in the Meredith Case, supra) and in the War Revenue Act of 1898 (considered in the Chamberlin Case).

We have not overlooked the argument that the ascertainment of the amount of net income, including items deductible for operating expenses, and for losses by property depreciation, involves questions of fact, to be determined upon testimony and inferences therefrom, as to which reasonable minds may well differ. But this does not make their determination exclusively a legislative, as distinguished from a judicial, act. What is a necessary expense of operation and what is a reasonable allowance for property depreciation are ultimately questions of fact, and of no different kind than those which courts are trying every day. The fact that their determination involves personal judgment does not make to the contrary; courts and juries are constantly deciding kindred questions of reasonable care, reasonable cause, reasonable delay, reasonable compensation, and reasonable disbursements, all of which involve the personal judgment

of the triers. Such questions are essentially judicial; so far as they involve legal questions, they are absolutely so. Indeed in the normal suit to recover back taxes, paid under protest, questions of fact concerning the propriety and amount of the assessment not infrequently are litigated, and of a nature nowise different from those involved here. Whatever differences there may be between deciding questions of "necessary operating expenses" and "reasonable allowance for depreciation," on the one hand, and, on the other, the value of the land conveyed in a suit for the stamp tax "or losses on real estate purchased" and "losses incurred in trade" in an income tax suit are "of degree merely, not of principle." As said in the Tilden Case, supra, 9 Ben. at page 391, Fed. Cas. No. 16,519:

"Whether the tax be one on income, or on undistributed earnings of a bank added to its contingent fund, or on a legacy or a succession, or on any other subject of tax, where a tax of a fixed percentage is imposed by the statute on a subject or object which is so definitely described in the statute that its amount or value, on which the fixed per centum is to be calculated, can be ascertained and determined, on evidence, by a court, a suit for the tax will lie, without an assessment."

The excise tax system in question differs radically in principle from state ad valorem taxation systems. "There no tax is imposed until the officers act, and no suit for any tax will lie until after such action by the officers." Tilden Case, 9 Ben. 391, Fed. Cas. No. 16,519. Here the law itself imposes the specific tax.

Had there been true return, and an assessment based thereon, it may be assumed that no right of action would accrue to the government to recover an additional amount because of an original error on the part of the Commissioner, or his subsequent change of mind as to the propriety of the amount assessed. But such case is fundamentally distinguished from the case we have here, in which, under the averments in the declaration, the defendant was, as matter of law, liable to a tax in excess of that presumably paid by precisely the amount of the statutory tax on the items erroneously returned by way of deduction.

We think it clear that one who, through erroneous return, has made it impossible for the Commissioner to exercise his judgment upon the items affected thereby cannot be heard to object that the only remedy open to the government is invoked. Indeed, the declaration avers that the Commissioner has "disallowed" the deduction of the items in question, and the natural inference therefrom is that, so far as he can, he has held the defendant liable for the excise tax thereon. It results from these views that the learned district judge was in error in holding that this suit was barred by the Commissioner's failure to reassess. The conclusion we have arrived at has been reached in two cases in district courts: United States v. Threshing Co. (D. C.) 229 Fed. 1019; United States v. Grand Rapids & Indiana Ry. Co. (D. C.) 239 Fed. 153.

[6] As to the criticism that the declaration avers no fact tending to show that the expenses alleged to have been erroneously returned were not necessary expenses, or that the claimed amounts of deduction for depreciation are not reasonable allowances, we need only

say that erroneous or untrue return of the operating expenses and deductions for depreciation is sufficiently averred, and that evidence sustaining the allegations of incorrectness need not be set out.

Of the criticism that the act does not require that items of claimed property depreciation be charged against the capital valuation on defendant's books, it is enough to say that the declaration expressly avers that the alleged deductions were not reasonable allowances for depreciation, within the meaning of the act. If more definite or detailed information is needed to enable defendant to plead or prepare for trial, relief by bill of particulars or otherwise is obvious.

The judgment of the District Court is reversed, and the record remanded to that court, with directions to take further proceedings not inconsistent with this opinion.