### UNITED STATES v. WADDELL INV. CO.

(District Court, W. D. Missouri, W. D. January 26, 1921.)

No. 4972.

1. **Internal revenue** ☞9—**Interest on mortgages deposited with trustee income of loan company, though paid out to holders of mortgage certificates.**

A loan and investment company, which loaned money and took back mortgages upon real estate, which, together with the notes secured thereby, it sold to its clients desiring investment, did not change its situation by placing such mortgages and notes with a trustee and issuing and selling mortgage certificates of convenient denominations, so far as the application of Act Cong. Aug. 5, 1909, c. 6, § 38, providing for a 1 per cent. excise tax on net income, was concerned, and the interest received by it from the trustee must be considered as part of its gross income, and its net income, or profits, was substantially the difference between the aggregates of interest so received and interest paid to the holders of the mortgage certificates, plus sums accruing from commissions, and such company improperly deducted from the net income shown in its return the amount of interest received from the mortgages, on the theory that it went directly to pay the interest on its first mortgage certificates, since the allowance of such deduction would have the effect, in substance, of permitting the corporation to deduct from the gross amount of its income interest paid on its bonded or other indebtedness to an amount exceeding its paid-up capital stock.

2. **Internal revenue** ☞25—**Assessment unnecessary, where tax is a fixed percentage.**

Where a tax of a fixed percentage, like that imposed by the Excise Law of 1909, § 38, on corporations, is so definitely described in the statute that

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

its amount or value can be ascertained and determined on evidence by a court, a suit therefor will lie without assessment.

**At Law.** Action by the United States against the Waddell Investment Company. Judgment for plaintiff.

This is an action against the defendant to recover a special excise tax for the years 1909 to 1912, inclusive, with respect to carrying on and doing business by it, imposed and provided for in Act Cong. Aug. 5, 1909, c. 6, § 38. The plaintiff claims that the defendant was not lawfully entitled to deduct from its income interest received on mortgages and notes which it had placed with a trustee to secure payment of mortgage certificates issued to purchasers, for the reason that defendant was not a bank, banking association, or trust company, and for the further reason that defendant, in its return, under the heading "Deductions," and item 6 (a) of the printed form thereof, being, to wit, "Total amount of interest, January 1 to December 31, on bonded or other indebtedness to an amount not to exceed amount of paid-up capital at close of year," had already deducted from its gross income the total amount of interest paid by it within the year on its bonded or other indebtedness, to an amount of such bonded and other indebtedness, not exceeding its paid-up capital stock at the close of each year, and was therefore not lawfully entitled to deduct the sums in question from its gross income.

L. M. Haydon, Asst. U. S. Atty., of Springfield, Mo., for the United States.

J. C. Hargus, of Kansas City, Mo., for defendant.

VAN VALKENBURGH, District Judge. The assessment against the defendant company was made under section 38 of the Act of Congress approved August 5, 1909, 36 Statutes at Large, p. 112, which provides:

"That every corporation, joint-stock company or association, organized for profit and having a capital stock represented by shares * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation," etc., "equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations, joint stock companies or associations, or insurance companies, subject to the tax hereby imposed. * * *

"Second. Such net income shall be ascertained by deducting from the gross amount of the income of such corporation," etc., "received within the year from all sources, (first) all the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties, including all charges such as rentals or franchise payments, required to be made as a condition to the continued use or possession of property; (second) all losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any, and in the case of insurance companies the sums other than dividends, paid within the year on policy and annuity contracts and net addition, if any, required by law to be made within the year to reserve funds: (third) interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of such corporation," etc.; "(fourth) all sums paid by it within the year for taxes imposed under the authority of the United States or of any state or territory thereof," etc.; "(fifth) all the amounts received by it within the year as dividends upon stock of other corporations," etc., "subject to the tax hereby imposed."

The defendant company was organized as what is known as a loan and investment company:

"To loan money on real estate and personal security; to buy, hold, own, sell, indorse, negotiate and execute bonds, and notes secured by mortgages and deeds of trust on real estate, and all kinds of negotiable paper, bonds, debentures and other evidence of debt, for itself and for others; to borrow money and to pledge its property as security for the repayment thereof; to issue and sell its debentures and certificates and secure the same by pledge of notes, bonds and other securities, real and personal; to buy, own, hold, sell, convey, improve and lease real estate for itself, and as agent on commission, and to act as agent for other persons, companies, corporations and associations, and to do a general loan and investment business."

Under its charter, originally, it loaned money, taking back mortgages upon farms and other real estate, which said mortgages together with the notes secured thereby it sold to its clients desiring investments. Subsequently, for convenience, as described by its president, it made a change in the form and procedure of such transactions, while retaining the essential nature of its business. It had found that investors often required loans in denominations which did not fit the size and denominations of the notes and mortgages it had for sale. Consequently it decided to issue and sell its own so-called first mortgage certificates of convenient denominations, and to place behind these, as security, with a trustee, the notes secured by mortgage which it had previously acquired, and which, in its former course of business, it had been its practice to sell. This was analogous to a debenture transaction. In practice, as well as in substance, it received through the trustee the interest upon its securities placed with the trustee, and paid out from such sources, and from its other sources of revenue, the interest accruing upon its first mortgage certificates sold by it to investors. Substantially, the difference between such aggregates of interest, plus sums accruing from commissions, constitutes its net income or profits.

[1] It still owns the securities placed with the trustee, subject to the purposes for which they were pledged, and the interest and income from such securities are its income and interest. There is no difference, in a legal sense, between its present situation and its former situation, so far as the application of this law is concerned. It has deducted from the net income shown in its return the amount of interest received upon these mortgages on the theory that it goes directly to pay the interest on its first mortgage certificates. It is sufficient to say that there is no identity between such payments, and formal identity could not affect the issue. The mortgage interest comes into its assets, and the interest upon certificates is paid out generally from such assets. The allowance of this claim would have the effect, in substance, of permitting the defendant company to deduct from the gross amount of its income interest paid on its bonded or other indebtedness to an amount exceeding its paid-up capital stock. Aside from all this, the income from such sources is income of the defendant corporation, and should be considered and treated as such for the purposes of this excise tax. The case, to my mind, presents no difficulty whatever, and it is accordingly ruled that the plaintiff should recover in this action upon the several counts for the amounts shown to be due under the provisions of the law.

[2] "Where a tax of a fixed percentage [like the one imposed by Excise Law of 1909 on corporations] is so definitely described in the statute that its amount or value * * * can be ascertained and determined, on evidence, by a court, a suit [therefore] will lie, without an assessment." United States v. Grand Rapids & I. Ry. Co. (D. C.) 239 Fed. 153.